**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carrie M. Noderer,<br><br>                Plaintiff,<br><br>v.<br><br>Commissioner of Social Security<br>Administration,<br><br>                Defendant. | No. CV-23-01742-PHX-DGC<br><br>**ORDER** |

Plaintiff Carrie Noderer seeks judicial review of the final decision of the Commissioner of Social Security, which denied her claim for disability insurance benefits. For reasons stated below, the Court will affirm the decision.

## I.     Background.

Plaintiff is 46 years old, has a college education, and previously worked as a school teacher, sales representative for educational courses, child welfare worker, and school accountant.  Administrative Transcript ("Tr.") 52, 169, 199, 343, 460, 473-74.  Plaintiff was diagnosed with bipolar disorder as a teenager, but successfully managed the condition for many years.  Tr. 41, 340-43.  Before her husband's death in December 2017, Plaintiff was fully functional and able to work and care for her husband and four minor children.  Tr. 223, 356, 461-63.  She stopped working in January 2018 because the loss of her husband exacerbated her bipolar disorder and caused severe depression and anxiety.  Tr. 41-42, 169, 198, 340-43.  She returned to work as a teacher in July 2019.  Tr. 52, 279, 461.

Plaintiff initially alleged a disability onset date of January 17, 2018, but thereafter sought disability benefits for the closed period between January 24, 2018 and July 23, 2019. Tr. 169, 196, 461.  The claim was denied by state agency physicians at the initial and reconsideration levels.  Tr. 58-82.  A hearing before an Administrative Law Judge ("ALJ") was held in March 2020.  Tr. 31-57.  The ALJ denied the claim in April 2020 and the Appeals Council upheld the decision.  Tr. 1-9, 14-30.  Plaintiff sought judicial review in April 2021.  Judge Michael Liburdi reversed the decision and remanded the case in June 2022, finding that the ALJ had failed to properly evaluate the opinions of Drs. Marilyn Kieffer-Andrews and Robert Williams.  Tr. 506-15; *see Noderer v. Comm'r of Soc. Sec.*, No. CV-21-00718-PXH-MTL (D. Ariz. June 3, 2022) (Doc. 18).

The ALJ held a new hearing on June 6, 2023, at which Plaintiff and a vocational expert testified.  Tr. 458-78.  The ALJ issued another unfavorable decision on June 28, 2023.  Tr. 436-57.  This decision became the Commissioner's final decision when the Appeals Council declined review.

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Doc. 1.  The parties briefed the issues after receipt of the certified administrative transcript. Docs. 6-7, 8, 10-11.

**II.    Standard of Review.**

The Court must affirm the ALJ's decision if it is free of legal error and supported by substantial evidence.  42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion.  *Id.*  In determining whether substantial evidence supports the ALJ's decision, the Court must consider the record as a whole and "may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the evidence.  *Magallanes*, 881 F.2d at 750.  Where "the evidence is susceptible

1  to more than one rational interpretation, one of which supports the ALJ's decision, the

2  ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

3       In reviewing the ALJ's decision, the Court considers "only issues which are argued

4  specifically and distinctly in a party's opening brief."  *Indep. Towers of Washington v.*

5  *Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see Lewis v. Apfel*, 236 F.3d 503, 517 n.13

6  (9th Cir. 2001).  A general assertion that the ALJ committed legal error, or that the ALJ's

7  decision is not supported by substantial evidence, is not sufficient to raise that issue for

8  review.  *See id.*; LRCiv 16.1(a) (explaining that the opening brief must contain all alleged

9  errors and each argument must be supported by specific reference to the record).

10  **III.   Disability and the Five-Step Evaluation Process.**

11       Under the Social Security Act, a claimant is disabled if she cannot engage in

12  substantial gainful activity ("SGA") because of a medically determinable physical or

13  mental impairment that has lasted, or can be expected to last, for twelve months or more.

14  42 U.S.C. § 423(d)(1)(A).  Whether the claimant is disabled is determined by a five-step

15  process.  The claimant must show that (1) she did not engage in SGA during the alleged

16  disability period, (2) she had a severe impairment (or combination of impairments) that

17  meets the twelve-month durational requirement, and (3) the impairment meets or equals a

18  listed impairment or (4) her residual functional capacity ("RFC") – the most she can do

19  with her impairment – precluded her from performing past work.  If the claimant meets her

20  burden at step three, she is presumed disabled and the process ends.  If the inquiry proceeds

21  and the claimant meets her burden at step four, then (5) the Commissioner must show that

22  the claimant was able to perform other available work given her RFC, age, education, and

23  work experience.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(v); Social Security Ruling

24  ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); *Kennedy v. Colvin*, 738 F.3d 1172, 1175

25  (9th Cir. 2013).[1]

26  _____

27       [1] An impairment is "severe" if it significantly limits the ability to perform basic
    work activities, including the mental functions of understanding, remembering, and
28  carrying out instructions; use of judgment; responding appropriately to supervision,
    co-workers, and usual work situations; and dealing with changes in a routine work setting.
    20 C.F.R. §§ 404.1520(c), 404.1522(c).

The ALJ found that Plaintiff met her burden at steps one and two because she did not engage in SGA for a continuous twelve-month period and had severe bipolar, depression, and anxiety disorders. Tr. 442.[2]

The ALJ found at step three that Plaintiff's impairments do not meet or medically equal the severity of a listed impairment, including Listing 12.04 for depressive and bipolar disorders and Listing 12.06 for anxiety and obsessive-compulsive disorders. Tr. 442-44.[3]

At step four, the ALJ determined that while Plaintiff had increased symptoms after her husband's death, her allegations regarding the length and severity of her symptoms was contradicted by the medical evidence and other evidence in the record showing that she was doing well enough to work within twelve months from the disability onset date. Tr. 450. After considering the entire record, the ALJ found that Plaintiff could not perform her past skilled work, but had the RFC to perform unskilled work at all exertional levels with the following non-exertional limitations: she could perform simple, routine tasks, make simple work-related decisions, and occasionally interact with supervisors, coworkers, and the public. Tr. 444, 450.

Based on Plaintiff's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that Plaintiff was able perform the jobs of hand packager, cook helper, and routing clerk. Tr. 450-51.

---

[2] Based on the ALJ's findings at steps three and four as discussed below, it does not appear that Plaintiff has in fact met her burden at step two of showing that her severe impairments lasted for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the durational requirement."); 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have  a severe . . . impairment that meets the duration requirement in § 404.1509, . . . we will find that you are not disabled."); SSR 82-52, 1982 WL 31376, at *1 (Jan. 1, 1982) ("Since the Social Security Amendments of 1965, the disabling impairment(s) preventing an individual from engaging in SGA (or any gainful activity) . . . must have lasted (or be expected to last) for at least 12 continuous months[.]"). But the parties do not address step two in their briefing.

[3] The Listing of Impairments describes major impairments considered severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"); *see* 20 C.F.R. §§ 404.1520(d), 404.1525(a). Mental disorders are arranged in eleven categories in Listings 12.02-12.15 (Listings 12.09 and 12.13 are reserved). *See* Listing 12.00(A)(1).

4

1    **IV.    Discussion.**

2            Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate the opinions

3    of Drs. Kieffer-Andrews and Williams regarding Listing 12.04 and the RFC;

4    (2) discounting Plaintiff's symptom testimony; (3) finding her mother's lay-witness

5    statements only partially persuasive; and (4) relying on the vocational expert's testimony.

6    Doc. 8 at 1-2, 7-19.  Defendant argues that the ALJ committed no harmful legal error and

7    his decision is supported by substantial evidence.  Doc. 10 at 2-12.

8            **A.    The Opinions of Drs. Kieffer-Andrews and Williams.**

9                    **1.    Evaluation of Medical Opinions.**

10           "When determining whether a claimant is eligible for benefits, an ALJ need not take

11   every medical opinion at 'face value.'  Rather, the ALJ must scrutinize the various – often

12   conflicting – medical opinions to determine how much weight to afford each opinion."

13   *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (quoting *Ford v. Saul*, 950 F.3d

14   1141, 1155 (9th Cir. 2020)).

15           For claims filed before March 27, 2017, the regulations require an ALJ "to assess

16   medical opinions 'based on the extent of the doctor's relationship with the claimant.'"  *Id.*

17   at 1214 (quoting *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022)); *see* 20 C.F.R. §

18   404.1520.  "To reject either a treating or an examining physician's opinion, an ALJ must

19   provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence,

20   or 'specific and legitimate reasons' otherwise[.]"  *Woods*, 32 F.4th at 789 (citations

21   omitted).

22           Because Plaintiff filed her claim after March 27, 2017 (*see* Tr. 169), revised

23   regulations regarding the evaluation of medical opinions apply.  *See* Revisions to Rules

24   Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20

25   C.F.R. § 404.1520c.  "The revised regulations provide that ALJs will no longer 'defer or

26   give any specific evidentiary weight' to any medical opinions."  *Cross*, 89 F.4th at 1214

27   (citation omitted).  Indeed, this Circuit made clear in *Woods* that the revised regulations

28   "are clearly irreconcilable" with its longstanding treating source rule, which categorized

1    medical opinions in a three-tiered hierarchy that "accord[ed] special deference to the

2    opinions of treating and examining physicians on account of their relationship with the

3    claimant" and less weight to the opinions of physicians who only review the record.  32

4    F.4th at 792.

5            Under the revised regulations, an ALJ's reasons for discrediting a medical opinion

6    "must simply be supported by substantial evidence."  *Id.* at 787.  There is no "inherent

7    persuasiveness" to opinions from either a claimant's own medical sources or government

8    consultants.  *Id.* at 791.  The most important factors are "supportability" and "consistency."

9    *Id.*  "Supportability" is "the extent to which a medical source supports the medical opinion

10   by explaining the 'relevant objective medical evidence.'"  *Id.* at 791-92 (quoting 20 C.F.R.

11   § 404.1520c(c)(1)).  "Consistency" is "the extent to which a medical opinion is 'consistent

12   with the evidence from other medical sources and nonmedical sources[.]'"  *Id.* at 792

13   (quoting 20 C.F.R. § 404.1520c(c)(2)).

14           Under the new regulations, however, "an ALJ cannot reject an examining or treating

15   doctor's opinion as unsupported or inconsistent without providing an explanation[.]"

16   *Woods*, 32 F.4th at 792.  The ALJ "must articulate how persuasive [he] finds all of the

17   medical opinions from each doctor or other source, and explain how [he] considered the

18   supportability and consistency factors in reaching these findings."  *Id.* (citing 20 C.F.R. §

19   404.1520c(b)) (cleaned up); *see* 82 Fed. Reg. at 5858 (explaining that the new regulations

20   set forth a "minimum level of articulation" necessary for "decisions to provide sufficient

21   rationale for a reviewing adjudicator or court").

22                   **2.    Dr. Kieffer-Andrews' Opinions.**

23                       **a.    Listing 12.04.**

24           Listing 12.04 concerns depressive, bipolar, and related disorders.    Listings

25   12.00(A)(1), 12.04.  These disorders are characterized by an irritable, depressed, elevated,

26   or expansive mood, or by a loss of interest or pleasure in most activities, causing a

27   significant decline in functioning.  Listing 12.00(B)(3)(a).

28

Listing 12.04 contains three paragraphs, designated A, B, and C.  To meet this listing, the claimant must show that her impairments satisfy the criteria of paragraph A and the criteria of either paragraph B or C.  Listings 12.00(A)(2), 12.04; *see Murriel L. H. v. Kijakazi*, No. EDCV 21-01997-RAO, 2022 WL 18028276, at *3 (C.D. Cal. Dec. 28, 2022) ("To meet [Listing 12.04], a claimant must demonstrate that her mental disorder satisfies the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C."); *see also Salazar v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00743-PHX-DWL, 2023 WL 2386143, at *3 (D. Ariz. Mar. 7, 2023) ("It is the claimant's burden to prove her impairment meets the criteria of a listed impairment.").

Paragraph A includes the medical criteria for the mental disorders that must be present in the medical evidence.  Listings 12.00(A)(2)(a), 12.04(A).  Depressive disorder is characterized by five or more of the following symptoms: depressed mood; diminished interest in activities; appetite loss with weight change; sleep disturbance; psychomotor agitation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide.  Listing 12.04(A)(1)(a)-(i).  Bipolar disorder is characterized by three or more of the following: pressured speech; flight of ideas; inflated self-esteem; decreased need for sleep; distractibility; activities that have painful consequences that are not recognized; increase in goal-directed activity or psychomotor agitation.  Listing 12.04(A)(2)(a)-(g).

The paragraph B criteria are used to evaluate the degree to which an impairment limits four broad areas of mental functioning that a person typically uses in a work setting: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  Listings 12.00(A)(2)(b), 12.04(B); 20 C.F.R. § 404.1520a(c)(3).  The degree of limitation for each area is rated as none, mild, moderate, marked, or extreme.  Listing 12.00(F)(2); 20 C.F.R. § 404.1520a(c)(4).  To satisfy the paragraph B criteria, the claimant must show that her mental disorder results in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning.  Listing 12.00(A)(2)(b), (F)(2).  The claimant has

a marked limitation if she is seriously limited in her ability to function independently, appropriately, effectively, and on a sustained basis in an area.  Listing 12.00(F)(2)(d).  The claimant has an extreme limitation if she is not able to function in an area at all.  Listing 12.00(F)(2)(e); 20 C.F.R. § 404.1520a(c)(4).

The paragraph C criteria are used to evaluate whether a mental disorder is serious and persistent.  Listings 12.00(A)(2)(c), 12.04(C).  To satisfy the paragraph C criteria, there must be a medically documented history of the mental disorder over a period of at least two years, and evidence showing both: (1) the claimant, on an ongoing basis, relies on medical treatment, therapy, psychosocial support, or a highly structured setting to diminish signs and symptoms of the mental disorder; and (2) the claimant, despite diminished signs and symptoms, has achieved only marginal adjustment, meaning a minimal capacity to adapt to changes that are not already part of her daily life.  *Id.*; *see Murriel L. H.*, 2022 WL 18028276, at *3.

As noted, the ALJ found that Plaintiff's mental impairments do not meet or equal Listing 12.04.  Tr. 442.[4]

### b.    Listing 12.04 Questionnaire.

Dr. Kieffer-Andrews completed a check-box questionnaire for Listing 12.04 in July 2018.  Tr. 347-48 (Ex. 5F).  According to Plaintiff, Dr. Kieffer-Andrews opined that her "bipolar depressive order met the requirements of Listing 12.04C."  Doc. 8 at 7.  This is not correct.  Dr. Kieffer-Andrews found the C2 criteria to be satisfied, but checked the "No" box for the C1 criteria:

C. The mental disorder in this category is "serious and persistent;" that is, a medically documented history of the existence of the disorder over a period of at least 2 years ☒ Yes   ☐ No

and evidence of both:

1. Medical treatment, mental history therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder ☐ Yes ☒ No

---

[4] Plaintiff does not contend that her impairments medically equal the listing in paragraphs A and B.  Nor does she challenge the ALJ's finding that the impairments do not meet Listing 12.06.

Tr. 348.[5]

"For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ford*, 950 F.3d at 1148 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  The ALJ correctly found that the questionnaire Dr. Kieffer-Andrews completed shows that Plaintiff's impairments do not meet Listing 12.04 "because the B criteria were not met and C.1 was not met."  Tr. 442 (citing Ex. 5F); *see also* Tr. 444 ("Dr. Marilyn Kieffer-Andrews . . . answered the C1 criteria question, 'No.' (Ex. 5F/2) . . . .  Both C1 and C2 are required to be answered yes to meet listing criteria.").[6]

In asserting that Dr. Kieffer-Andrews opined that Listing 12.04C had been met, Plaintiff addresses only the C2 criteria, noting that she had "a serious and persistent mental disorder with marginal adjustment (defined as minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life)[.]"  Docs. 8 at 7, 11 at 2.  Plaintiff makes no mention of the C1 criteria.  *See id.*

What is more, the ALJ did not rely solely on Dr. Kieffer-Andrews' questionnaire in finding that Listing 12.04 was not met.  He found that the C2 criteria were not satisfied because after her husband's death Plaintiff exhibited the "capacity to adapt to changes in her environment and demands not already part of her daily life as shown by her successful ability to manage the needs of her children."  Tr. 444.

The ALJ further found that the paragraph C criteria were not met because Plaintiff had no severe mental impairment for at least two years as required for Listing 12.04.  *Id.*; *see* Listings 12.00(A)(2)(c), 12.04(C); 20 C.F.R. § 404.1525(c)(4) ("Most of the listed impairments are permanent or expected to result in death.  For some listings, we state a specific period of time for which your impairment(s) will meet the listing.").  The ALJ

---

[5] Dr. Kieffer-Andrews found the paragraph A criteria to be satisfied, but did not address the paragraph B criteria.  Tr. 347-48.

[6] In assessing Plaintiff's RFC at step four, the ALJ erroneously stated that Dr. Kieffer-Andrews completed forms indicating that Plaintiff had met Listing 12.04.  Tr. 447-48.  It is not clear why the ALJ made this statement given his contrary finding at step three.  *See* Tr. 442, 444.

9

1   explained that Plaintiff's bipolar disorder had been well-controlled with medication for

2   many years and that it was only after her husband's passing in December 2017 that she

3   sought therapy from Dr. Kieffer-Andrews to get through the grieving process.  Tr. 447.

4          The ALJ also determined that the paragraph B criteria were not satisfied.   Tr.

5   442-44.  He addressed the four areas of mental functioning and found that Plaintiff's

6   impairments caused only a moderate limitation in each area.  Tr. 443-44.  He correctly

7   found that Plaintiff fails to meet the paragraph B criteria because her impairments "do not

8   cause at least two 'marked' limitations or one 'extreme' limitation' in the four areas of

9   mental functioning."  Tr. 444; *see* Listing 12.00(A)(2)(b), (F)(2).[7]

10         Listed impairments are set "at a higher level of severity than the statutory standard

11  [and] define impairments that would prevent an adult, regardless of his age, education, or

12  work experience, from performing *any* gainful activity, not just 'substantial gainful

13  activity.'"  *Sullivan*, 493 U.S. at 532 (quoting 20 C.F.R § 416.925(a)).  "Listed impairments

14  are purposefully set at a high level of severity because 'the listings were designed to operate

15  as a presumption of disability that makes further inquiry unnecessary.'"  *Kennedy*, 738 F.3d

16  at 1176 (quoting *Sullivan*, 493 U.S. at 532)).  Plaintiff has not shown that the ALJ erred in

17  finding at step three that her mental impairments do not meet the severity of Listing 12.04,

18  and further inquiry regarding an RFC and the vocational factors is therefore warranted at

19  steps four and five.[8]

20                          **b.      RFC Form.**

21         Dr. Kieffer-Andrews completed a check-box form regarding Plaintiff's mental RFC

22  in July 2018.  Tr. 351-53 (Ex. 6F/3-5).  This RFC form is used to evaluate limitations in

23  four work-related areas of mental functioning: understanding and memory, sustained

24  concentration and persistence, social interaction, and adaption.  Tr. 351-52.  The form rates

25

26         [7] Plaintiff does not challenge the ALJ's finding that the paragraph B criteria were
    not met.  *See* Docs. 8 at 7-10, 11 at 2-4.

27         [8] The ALJ made clear that the broad limitations identified in the paragraph B and C
    criteria are used only to rate the severity of mental impairments at step three, and that the
28  RFC assessment used at steps four and five requires a more detailed evaluation of the
    claimant's functional limitations.  Tr. 444; *see* SSR 96-8, 1996 WL 374184, at *4.

limitations as none, mild, moderate, moderately severe, and severe.  Tr. 351.  The term
"none" indicates no limitation and the term "severe" denotes the inability to perform the
designated function on a regular, reliable, and sustained schedule.  *Id.*  The three
intermediate ratings represent the ability to perform the designated function, but with
escalating levels of difficulty – up to ten percent of the workday or week (mild), eleven to
twenty percent of the workday or week (moderate), and more than twenty percent of the
workday or week (moderately severe).  *Id.*  The form also contains a "Functional Capacity
Assessment" section in which the evaluator can explain her conclusions in narrative form.
Tr. 353.

Dr. Keiffer-Andrews opined in the RFC form that Plaintiff would have severe
limitations in her ability to perform activities within a schedule, maintain regular
attendance, be punctual within customary tolerances, complete a normal workday or work
week, and perform at a consistent pace.  Tr. 351-52.  She further opined that Plaintiff would
have moderate to moderately severe limitations in multiple other categories of work-related
mental functioning, including understanding and remembering instructions, carrying out
detailed instructions, engaging in social interaction, and responding appropriately to
changes in the work setting.  *Id.* [9]

The ALJ reasonably found that while Plaintiff's impairments caused certain
limitations, the medical evidence does not support the severity of limitations opined to by
Dr. Keiffer-Andrews.  Tr. 447; *see* 20 C.F.R. § 404.1520c(c)(1); *Woods*, 32 F.4th at 791
(explaining that supportability is one of the most important factors in evaluating medical
opinions).  The ALJ explained that Dr. Keiffer-Andrews had been treating Plaintiff only
since January 2018, and during the first visit, when Plaintiff sought help with the grieving
process, Dr. Keiffer-Andrews instructed Plaintiff to file for disability benefits.  Tr. 447
(citing Tr. 324-25 (Ex. 2F/1-2)); *see* 20 C.F.R. § 404.1520c(c)(3)(i), (iii) (the length and
purpose of the treatment relationship are relevant factors in evaluating medical opinions);

---

[9] Dr. Keiffer-Andrews did not explain her opinions in the Functional Capacity
Assessment section.  *See id.*

1  *Rogers v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00532-TUC-SHR (MSA), 2022 WL

2  464911, at *4 (D. Ariz. Jan. 11, 2022) ("An ALJ may appropriately consider the length of

3  a treatment relationship, as a longer relationship may indicate that the medical source has

4  a better understanding of the claimant's impairments."); *Ramirez v. Comm'r of Soc. Sec.*

5  *Admin.*, No. CV-21-01736-PHX-SMB, 2023 WL 2596102, at *3 (D. Ariz. Mar. 22, 2023)

6  ("The revised regulations allow ALJs to consider the purpose of the treating relationship

7  as a factor when determining an opinion's persuasiveness[.]").  The ALJ noted that while

8  Plaintiff had a blunted affect and was anxious during the initial visit, "her mental status

9  was very good with hardly any symptoms."  Tr. 447 (citing Tr. 326 (Ex. 2F/3)).  The ALJ

10  also explained that the treatment notes for February and March 2018 show that Plaintiff's

11  children were the center of the discussions, she talked about going on trips with the

12  children, and she said nothing that would lead Dr. Kieffer-Andrews to find she was "totally

13  unable to work."  *Id.* (citing Tr. 324-39 (Exs. 2F and 3F)).

14       Regarding the treatment notes for April through September 2018, the ALJ correctly

15  found:

16       Most of these meetings were about the claimant's plans for the children.  The
17       claimant had no sleep problems in May.  She was trying to find time for
         self-care.  (Ex. 9F/3).  She took a trip to California in June.  (Ex. 9F/3).  In
18       July, the claimant was researching volunteering for foster families.  (Ex.
         9F/4).  In August, her financial situation had her looking for a job with
19       limited stress.  She needed a job for health insurance.  She mentioned she
20       wanted to be a childcare specialist and that she and the children had a good
         summer.  (Ex. 9F/4-5).  The claimant said it [w]as stressful looking for a job,
21       and managing her children's school, health, and counseling.  (Ex. 9F/5).  She
22       used the word 'stressful', not debilitating or disabling.  In September, the
         claimant was looking forward to planning Halloween.  (Ex. 9F/6).
23

24  *Id.* (citing Tr. 386-91).  The ALJ noted that medical records showing Plaintiff's "bipolar

25  disorder and insomnia under control and her anxiety under partial control do not support

26  Dr. Kieffer-Andrews' opinions."  Tr. 448 (citing Tr. 359, 429 (Exs. 8F/1, 11F/20)).

27       The ALJ also found Dr. Kieffer-Andrews' RFC assessment to be inconsistent with

28  her own treatment notes and Plaintiff's ability to manage her and her children's affairs.  Tr.

442; *see* 20 C.F.R. § 404.1520c(c)(2); *Woods*, 32 F.4th at 791 (consistency is an important factor in evaluating medical opinions).  The ALJ explained:

> The [RFC] form is not consistent with Ms. Kieffer-Andrews['] notes at Exhibits 2F, 3F, and 5F which show[] the claimant was totally absorbed and preoccupied in taking care of her four children, managing their education, managing the family's social life, and managing the family's medical care. She had no difficulty sleeping.  She was looking for work that was not stressful.  She was planning and taking vacations.  These notes are not consistent with Dr. Kieffer-Andrews['] characterizing her as being unable to remember work like procedures, unable to understand and carry out detailed instructions, and unable to maintain concentration.  To say she was unable to perform activities within a schedule when she did that all day with managing her children and their activities is not persuasive because it is inconsistent.

Tr. 442; *see Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions[.]").  The ALJ found the remainder of the RFC form "just as unpersuasive and inconsistent as it indicates severe inability to function such that the claimant would not have been able to manage herself, her household, her children, her family's social life, and her family's medical care[.]"  Tr. 442-43.

Plaintiff asserts that the medical records the ALJ cited are not inconsistent with the limitations assessed by Dr. Kieffer-Andrews.  Docs. 8 at 9-10, 11 at 3-4.  Plaintiff notes that the records show she had a blunted affect and was depressed, anxious, tearful, fatigued, and stressed.  *Id.* (citing Tr. 326-29, 359).  The ALJ acknowledged these impairments and symptoms, but reasonably concluded that the medical records were inconsistent with the severe functional limitations to which Dr. Kieffer-Andrews opined.  *See* Tr. 442-43, 447.

Plaintiff asserts that while Exhibit 8F/1 (a treatment note from Dr. Williams) shows that her insomnia was under control and her anxiety was under partial control, her main problem was bipolar disorder "complicated with severe grief."  Doc. 8 at 9 (citing Tr. 359). But in addressing Plaintiff's bipolar disorder and grief, Exhibit 8F/1 indicates that Plaintiff's "mood is 80/100 except for brief periods of depression[.]"  Tr. 359.  Plaintiff's MADRS score was 10, which indicates only mild depression.  *Id.*; *see also* Tr. 360 (noting

that "[m]ood is slightly depressed, patient appears well rested and calm").[10]  The ALJ did not err in finding that Plaintiff's bipolar disorder, even when complicated with grief, was under control by at least April 2018.  Tr. 448; *see* Tr. 359-60.

Plaintiff challenges the ALJ's reliance on her mental status exam score of 29 out of 30.  Doc. 8 at 8-9, 18; *see* Tr. 443, 448.  The exam was performed by consultive examiner Dr. Rick Webster.  Tr. 340-46 (Ex. 4F).  Dr. Webster explained that Plaintiff's score "indicates no cognitive impairment."  Tr. 343.  He also reported that although Plaintiff had slight difficulty with concentration, she was able to maintain attention and focus during the evaluation and could understand and answer basic questions.  Tr. 344.[11]

Plaintiff notes that the mental status exam tested for cognitive impairment and not bipolar or depressive disorders.  Doc. 8 at 8.  But the ALJ did not find otherwise.  He explained that the "score of 29 out of 30 suggests greater abilities than found by Dr. Keiffer-Andrews [because it shows] intact cognitive functioning."  Tr. 448.

Dr. Kieffer-Andrews opined that Plaintiff had more than mild limitations in her cognitive functioning – the ability to remember locations and work-like procedures and remember and understand instructions.  Tr. 351.  Because Plaintiff's near-perfect score on the mental status exam shows "adequate memory and understanding" (Tr. 443), the ALJ did not err in relying on the score to discount Dr. Kieffer-Andrews' opinions.  *See* Tr. 448; *Patrick Henry M. v. Comm'r, Soc. Sec. Admin.*, No. 3:17-CV-00548-HZ, 2019 WL 1874691, at *4 (D. Or. Apr. 26, 2019) ("An ALJ may reject an opinion that is inconsistent with the medical record . . . .  Here, the ALJ concluded that Dr. Weiss's opinion was

---

[10] The MADRS (Montgomery-Åsberg Depression Rating Scale) focuses on the psychological symptoms of depression, such as sadness, tension, and pessimistic thoughts. This scale is clinician-rated and consists of 10 items, each rated on a 0-6 scale, resulting in a maximum total score of 60 points.  A MADRS score ranging from 7 to 19 indicates mild depression.  *See* National Institute of Health, *National Library of Medicine*, https://www.ncbi.nlm.nih.gov/books/NBK409740/#S60 (last visited May 14, 2024).

[11] The ALJ found Dr. Webster's opinion persuasive based on his clinical exam of Plaintiff, expertise in psychology, and knowledge of the social security disability program. Tr. 449.  Plaintiff does not challenge this finding.  *See Orn*, 495 F.3d at 632 ("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (citations omitted).

14

1   internally inconsistent with his examination findings.  For example, Dr. Weiss opined that
2   Plaintiff had 'moderate' limitations in his ability to understand and remember simple
3   instructions . . . .   However, Dr. Weiss noted no deficits on the cognitive portion of the
4   Mental Status Examination.") (citations omitted); *Meza v. Comm'r Soc. Sec. Admin.*, No.
5   6:15-CV-02181-MA, 2017 WL 916446, at *7 (D. Or. Mar. 8, 2017) ("As the ALJ
6   discussed, Dr. Freed's mental status examination found problems with understanding and
7   memory, and sustained concentration and persistence, yet Plaintiff scored a 30 out of 30
8   on the Mini Mental Status Examination, indicating no cognitive deficits."); *Yablon v.
9   Colvin*, No. C14-5857JLR, 2015 WL 4309465, at *9 (W.D. Wash. July 13, 2015) ("[W]hile
10  the mental status exam showed no cognitive impairments, Ms. Kampf opined that Ms.
11  Yablon was markedly impaired in her ability to understand, remember, and follow simple
12  instructions. . . .  Thus, the objective medical evidence does not appear to support Ms.
13  Kampf's assessment of Ms. Yablon's limitations."); *Yearout v. Colvin*, No. 2:14-CV-0261-
14  TOR, 2015 WL 4664035, at *12 (E.D. Wash. Aug. 6, 2015) ("[T]here appeared to be
15  inconsistencies in Dr. Burdge's own report.  For instance, although Dr. Burdge opined that
16  Plaintiff was limited in her ability to understand, remember, and carry out detailed
17  instructions, the ALJ noted that Dr. Burdge's own mental status examination of Plaintiff
18  clearly showed Plaintiff's ability to follow both simple and complex instructions[.]").[12]

19          **3.     Dr. Williams' Opinions.**

20          Dr. Williams completed a check-box form regarding Plaintiff's mental RFC in
21  August 2018.  Tr. 354-56 (Ex. 7F/1-3).[13]  Dr. Williams opined in the RFC form that
22  Plaintiff had severe limitations in multiple areas of work-related mental functioning.
23  Tr. 354-55.  He further opined that Plaintiff was not able to work, explaining:

24 _____

25          [12] Judge Liburdi noted that although a mental status exam measures cognitive functioning, Plaintiff's limitations stem from bipolar and depressive disorders.  Tr. 512.
26  But as explained above, Plaintiff's cognitive functioning directly relates to Dr. Kieffer-Andrews' opinions about the work-related mental functioning areas of understanding and
27  memory.  *See* Tr. 351 (RFC form).

28          [13] Dr. Williams also completed several MADRS forms and a Listing 12.04 questionnaire, but Plaintiff does not address these documents in her briefing.  *See* Tr. 313, 321, 357, 366, 370, 378-79; Doc. 8 at 10-13, 11 at 4-5.

> Before the patient's husband died, the patient was fully functional working and caring for her husband and four children. After her husband's death, she cycled into a severe depression/severe anxiety that continues up to the present time in spite of aggressive medical therapies. The patient is totally disabled for all work.

Tr. 356.[14]

The ALJ considered Dr. Williams' RFC form in finding at step three that Plaintiff's impairments did not meet Listing 12.04. The ALJ explained:

> The degree of severity alleged by the claimant is not supported for more than a few months, immediately following her husband's death. Although [Dr. Williams] indicates that period lasted at least until August 13, 2018 (Ex. 7F/3), his notes contradict this. They show that in April of 2018, her mood was 80/100 except for brief periods of depression related to grief. She and her children were seeing counselors and getting support from the church. She was sleeping and her sleep was restful and restorative. She had anxiety due to financial problems and caring for children. Her insomnia and anxiety were controlled with medication. (Ex. 7F/3).

Tr. 443.

In considering the RFC form at step four, the ALJ noted, correctly, that Plaintiff's severe impairments had not existed for a period of twelve consecutive months at the time of Dr. Williams' opinions in August 2018. Tr. 448.[15] The ALJ found that if Plaintiff had the severe limitations opined to by Dr. Williams, which were more extreme than those of Dr. Kieffer-Andrews, Plaintiff would not have been able to care for her children which she was successfully doing. *Id.* The ALJ also found the limitations to be contradicted by

---

[14] The ALJ was not bound by Dr. Williams' opinion that Plaintiff was disabled because medical opinions provide judgments about the nature and severity of the claimant's impairments and the determination that an individual cannot work or is disabled is reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity."); *Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("As for the ALJ rejecting Dr. Rossetto's opinion on whether McLeod could work at any job, he was correct that this determination is for the Social Security Administration to make, not a physician.").

[15] Plaintiff does not contest this fact or otherwise address the twelve-month durational requirement for severe impairments. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

treatment notes at Exhibits 8F and 11F, which show that Plaintiff was well-rested and calm, had only a mildly depressed mood, had no cognitive deficits or significant attention problems, and had good insight and judgment.  Tr. 448-49 (citing Tr. 360, 427, 430).[16]

The ALJ provided this explanation for finding Dr. Williams' opinions unpersuasive:

> His opinions are inconsistent with and not supported by other evidence in the record.  Dr. Williams opined as to severe limitations in [the claimant's] ability to carry out very short and simple instructions, maintain attention, and sustain an ordinary routine without special supervision.  (Ex. 7F/1-2; Ex. 8F/22-23).  The claimant's own reports of caring for her four children, traveling to Flagstaff and the Grand Canyon, attending church, and searching for employment suggest[] greater levels of functioning than opined by the doctor and do not support the opinions making them inconsistent with other evidence and unpersuasive.  (Ex. 5E/2-4; Ex. 4F/3; Ex. 9F/1, 3, 4).  Furthermore[,] as discussed above, his psychiatric examinations finding normal speech, orientation, attention, memory, cooperation, and insight do not support his opinion.  (Ex. 1F/1; Ex. 8F/2, 6; Ex. 11F/18).

Tr. 449.

Plaintiff acknowledges that the ALJ cited medical records showing normal psychiatric findings.  Doc. 8 at 11.  Plaintiff contends the ALJ took these findings out of context and impermissibly relied on his own lay impression of the medical evidence in evaluating Dr. Williams' opinions and determining an RFC.  *Id.* at 11-12.  But it is "the responsibility of the ALJ, not the claimant's physician, to determine [RFC]."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "That determination is made 'based on all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and in doing so the ALJ must 'evaluate the persuasiveness of medical opinions,' 20 C.F.R. § 404.1520c(a)[.]"  *Tansy v. Comm'r of Soc. Sec. Admin.*, No. CV-21-1873-PHX-SMB (JFM), 2022 WL 16752321, at *9 (D. Ariz. Sept. 22, 2022).

_____

[16] It is worth noting that the treatment note from January 2018, shortly after her husband's passing, indicates that Plaintiff's mood was depressed and she appeared tired and anxious.  Tr. 448 (Ex. 1F/1).  The other treatment notes the ALJ cited, from April 2018 through July 2019 (when Plaintiff returned to work), show that Plaintiff had only a mildly depressed mood and was well-rested and calm.  Tr. 360, 427, 430 (Exs. 8F/2, 11F/18, 21).  This supports the ALJ's finding that the degree of severity alleged by Plaintiff is not supported for more than a few months after her husband's death.  Tr. 443, 448.

That is what the ALJ did here in concluding that Dr. Williams' opinions are not consistent with his treatment notes and Plaintiff's reports of her ability to function. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (rejecting the argument that the ALJ attempted to "play doctor" because "it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole," and the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC"); *Lopez v. Saul*, No. 1:19-CV-00971-BAM, 2020 WL 6526197, at *8 (E.D. Cal. Nov. 5, 2020) ("Plaintiff's additional argument that the ALJ 'played doctor' by interpreting the medical evidence . . . is likewise without merit.  Contrary to Plaintiff's contention, it is within the ALJ's province to synthesize the medical evidence.") (cleaned up); *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."); *see also* 20 C.F.R. §§ 404.1527(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner"); 404.1545(a)(1) ("We will assess your [RFC] capacity based on all the relevant evidence in your case record.").

To the extent Plaintiff advocates for an alternative interpretation of the evidence in the record, the Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  While Plaintiff may disagree with the RFC, the Court must uphold the ALJ's determination where, as here, it is a rational interpretation of the evidence.  *See Magallanes*, 881 F.2d at 750; *Adams v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01247-PHX-JAT, 2021 WL 2644272, at *4 (D. Ariz. June 28, 2021) ("[I]t is not for this Court to second guess the ALJ's reasonable interpretation of the medical record because 'where evidence is susceptible to more than one rational interpretation, as it is here, it is the ALJ's conclusion that must be upheld.'") (citation omitted); *Jaime v. Kijakazi*, No. 1:21-CV-01672-SKO, 2023 WL 2466196, at *11 (E.D. Cal. Mar. 10, 2023) ("Plaintiff appears to be advocating for an alternative interpretation of the evidence . . . .  The Court will not second-guess the ALJ's reasonable

interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.").

And contrary to Plaintiff's suggestion (Doc. 8 at 7), the ALJ's rejection of the severe limitations opined to by Drs. Williams and Kieffer-Andrews easily "clear[s] the low substantial evidence bar." *Ford*, 950 F.3d at 1159; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (the "substantial evidence" threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Ultimately, the evidence on [the] issue [of improvement with treatment] points in either direction.  Because substantial evidence is a relatively low evidentiary threshold and highly deferential, the ALJ's interpretation of the evidence was reasonable.") (citation omitted).

Plaintiff's reliance on *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001), is misplaced.  Doc. 8 at 12-13.  The ALJ in that case erroneously relied on a single treatment note indicating that the claimant was "doing better" but still experiencing severe panic attacks.  *Holohan*, 246 F.3d at 1205.  Here, the ALJ cited multiple treatment notes showing normal psychiatric findings during most of the alleged disability period.  Tr. 448.

Plaintiff asserts in her reply that she does not present an alternative interpretation of the evidence but merely highlights findings by the ALJ that Judge Liburdi ruled were improper.  Doc. 11 at 5.  But the undersigned judge must review the new decision the ALJ issued after remand.  What is more, Judge Liburdi found that the ALJ provided substantial evidence for the supportability factor because "[n]ormal attention, memory, and other psychiatric findings contradict Dr. Williams' opinion that [Plaintiff] would have difficulty with short and simple instructions, maintaining attention, and sustaining an ordinary routine without supervision."  Tr. 513.  Judge Liburdi found that the ALJ erred by failing

to address the consistency factor (Tr. 511-13), but the ALJ thoroughly discusses this factor in his new decision.

**B.      Plaintiff's Symptom Testimony.**

An ALJ must engage in a two-step analysis when evaluating symptom testimony. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving clear and convincing reasons. *Id.*

Plaintiff testified about her symptoms and daily activities at the administrative hearings and in a social security function report. Tr. 31-57, 222-30, 458-78. She stated that she took time off work after her husband died and became too depressed and anxious to return to work. She did not sleep well, had difficulty getting out of bed in the morning, and could not function during the day. She was unable to get herself ready to leave the house and missed her children's school events. Her oldest children helped with chores, cooking meals, and caring for pets, along with her mother and brother. She was able to take baths and dress herself, but usually bathed every few days. She had problems remembering things and often forgot to eat and take medication. *See id.*

Plaintiff read less due to problems with concentration and focus, and while she went to church as often as possible, she became less social. She took vacations with her family but found them difficult without her husband. On a trip to Flagstaff and the Grand Canyon with her children, she had to take breaks from driving due to crying spells and did not do any sightseeing or other activities. On a trip to San Diego for a family reunion, she stayed in the hotel room the entire time. *See id.*

The ALJ followed the required two-step process for evaluating Plaintiff's testimony. Tr. 444-47. The ALJ first found that Plaintiff's impairments could reasonably be expected

20

to cause her alleged symptoms.  Tr. 447.  The ALJ also found, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record.  Tr. 446-47.  The ALJ explained that the "objective medical evidence, the effectiveness of treatment, and [Plaintiff's] activities of daily living, illustrate greater functional abilities than alleged." Tr. 445.  Similarly, the ALJ stated that when carefully evaluated, Plaintiff's "subjective complaints appear inconsistent with the other evidence, including the clinical and objective findings of record, and fail to provide a sound basis for a finding of disability."  *Id.*  The ALJ did not completely reject Plaintiff's testimony about the severity of her symptoms, but instead found that the symptoms did not render her unable to perform unskilled work with certain restrictions for a period of twelve consecutive months.  Tr. 444, 450.

The ALJ found Plaintiff's testimony not entirely credible based on improved symptoms with treatment and medical evidence showing less than severe functional limitations:

> Treatment notes show the claimant responded well to conservative treatment, contradicting her allegations of disabling symptoms.  Medical records noted her bipolar disorder was complicated by the severe grief of losing her husband, which also increased her panic attacks to three to four times a week.  (Ex. 8F/5).  Doctors increased her Lamictal from 500 mg to 600 mg daily and added Seroquel 25 mg to her other medications of Geodon 120 mg and Wellbutrin 150 mg.  (Ex. 1F/4, 5, 10).  However, the record indicates, 'Since starting testosterone, her mood has greatly improved.'  (Ex. 11F/13)  Additionally, she controlled her panic attacks with Ativan 1 mg, taken as needed.  (Ex. 1F/17).  While the undersigned acknowledges the exacerbation of her impairments prevented her from performing her past relevant work, the medical records fail to support an inability to perform all [SGA] for a period of twelve consecutive months.

> In addition to the claimant's prescribed medications, she started working with a therapist.  (Ex. 1F/13).  Doctors counseled her to spend 20 minutes a day in front of a lite box.  (Ex. 8F/7).  Kathleen Gerace, D.O. observed, 'She is a very pleasant person and is moving forward in life, takes care of four children she adopted and is planning on returning to teaching.' (Ex. 10F/14).  With treatment, doctors reported her bipolar disorder and insomnia under

control and her anxiety under partial control.  (Ex. 1F/9; Ex. 8F/1; Ex. 10F/2, 16).  While psychiatric examination noted her depressed and anxious mood at times, examination also noted her normal speech, orientation, attention, cooperation and insight.  (Ex. 1F/1; Ex. 8F/2, 6; Ex. 11F/18).  Records further note her intact short-term and long-term memory.  (Ex. 1F/1; Ex. 2F/3; Ex. 8F/2, 6; Ex. 11F/18).

Tr. 446.

The ALJ provided this explanation for finding that Plaintiff's activities show greater functional abilities than alleged:

The claimant's activities of daily living illustrate a person more able bodied than alleged, which further supports the aforementioned [RFC].  On a routine basis, she reported the ability to take care of her personal hygiene, care for her children and pets, perform chores, prepare meals, drive, and grocery shop.  (Ex. 5E/2-4; Ex. 4F/3).  She took care of her four adopted children and her mother helped a lot.  (Ex. 4F/2).  Intellectually, she reported the ability to pay bills, count change, handle a savings account and use a checkbook.  (Ex. 5E/5).  Records indicate she started looking for work[] in August 2018 as a childcare specialist.  (Ex. 9F/4).  Socially, she interacted with family members and attended church, but reported difficulties handling large groups and generally becoming less social.  (Ex. 5E/6; Ex. 4F/2).

Despite the allegations of symptoms and limitations preventing all work, the record reflects the claimant vacationed during the period of the alleged disability.  Records indicate she vacationed with her children in Flagstaff and the Grand Canyon and traveled to California.  (Ex. 9F/1, 3).  The claimant's decision to go on vacations with children in tow implies a lesser severity of impairments and limitations than alleged.  The California trip was made with her mother driving to San Diego to a family reunion.  She testified that after making such a long trip she was unable to leave the room in which they were staying.  There is no reference to this allegedly traumatic trip other than a note from her therapist saying she missed her husband being on the trip.  There was no reference in treatment notes to it causing her to be unable to function on the trip or her not leaving the room.  (Ex. 9F/3).

Id.

Because the ALJ found no evidence of malingering, he could discount Plaintiff's testimony only by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  The ALJ's findings must be

"sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Thomas*, 278 F.3d at 958.

The ALJ met this standard. He carefully reviewed the medical evidence and found that Plaintiff's symptom testimony does not entirely comport with the numerous medical records reflecting normal to mild clinical findings and effective therapy. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.") (citations omitted); SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). The ALJ specifically found that for much of the alleged disability period, Plaintiff's functional limitations were consistent with an RFC for unskilled work with restrictions, such as being limited to simple tasks and work-related decisions and only occasional interaction with others. Although reasonable minds could reach different conclusions from Plaintiff's medical history, the Court "may not engage in second-guessing" where "the ALJ's credibility finding is supported by substantial evidence in the record[.]" *Thomas*, 278 F.3d at 959; *see Tamera H. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-1428-MO, 2024 WL 68354, at *3 (D. Or. Jan. 5, 2024) ("Plaintiff is correct, that absence of corroborating objective medical evidence is not a clear and convincing reason to discount subjective symptom testimony about pain; conflict with objective medical evidence is, however. *Smartt*, 53 F.4th at 498. And here, the ALJ relied on several inconsistencies between Plaintiff's testimony and the record – all valid reasons to discount her testimony[.]").

Plaintiff asserts that the ALJ failed to specify the testimony he found not credible and provided no clear and convincing reasons supported by substantial evidence to the reject her symptom testimony. Doc. 8 at 14-16. The Court disagrees. The ALJ recounted Plaintiff's testimony in detail and specifically identified the medical records and daily

activities he found inconsistent with the alleged severity of symptoms and inability to work. Tr. 445-47 (citing Exs. 5E/2-6; 1F/1, 4, 5, 7, 9-10, 13, 17; 2F/3; 4F/2-3; 8F/1-2, 5, 7; 9F/1-2, 4; 10F/2, 16; 11F/18).

And contrary to Plaintiff's suggestion (Doc. 8 at 14-16), the ALJ did not ignore Plaintiff's testimony that she often performed daily activities with difficulty and needed help from family members. *See* Tr. 445 (recounting Plaintiff's testimony). The ALJ reasonably found that the objective medical evidence and certain of Plaintiff's activities showed that her symptoms were not as severe as alleged. *See* Tr. 445-47. "Although the evidence of [Plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and '[the Court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quoting *Magallanes*, 881 F.2d at 750).

Plaintiff notes that there is no evidence to refute her testimony that she stayed in her hotel room during the vacations. Doc. 8 at 15. But the ALJ found that her decision to go on long road trips with four children suggests less severe limitations than alleged. Tr. 446. This finding is not unreasonable given Plaintiff's testimony that her symptoms were so severe that she was "non-functional" during the day, could not "do much of anything," and was "barely taking care of [her] children." Tr. 41-43; *see also* Tr. 463-69 (testimony about her inability to function); *Amanti v. Comm'r Soc. Sec. Admin.*, No. 6:11-CV-06378-MA, 2012 WL 5879530, at *3 (D. Or. Nov. 19, 2012) ("[T]he ALJ noted several instances after the alleged onset of plaintiff's disability where plaintiff reported going out of town . . . . Considering a significant portion of plaintiff's alleged disability is anxiety caused by leaving her home and being among the public, the ALJ reasonably could find that plaintiff's activities are inconsistent with her allegation that she is completely unable to work due to her symptoms.").

"Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict

24

claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ properly recognized that activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated"); *Pitts v. Kijakazi*, No. 2:22-CV-1713-EJY, 2023 WL 4864872, at *5 (D. Nev. July 28, 2023) ("The Court notes that even if [the] lengthy trips do not necessarily show Plaintiff could work, they support the ALJ's finding that the severity of the limitations described by Plaintiff were not fully credible."). Even if the ALJ erred in relying on the trips to discount Plaintiff's testimony of debilitating symptoms, the error was harmless given the other valid reasons the ALJ provided for discounting Plaintiff's testimony, such as her ability to take care of her personal hygiene, care for her children and pets, perform chores, prepare meals, drive, grocery shop, pay bills, count change, handle a savings account, and use a checkbook. Tr. 446; *see also Molina*, 674 F.3d at 1115 ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'") (citation omitted).[17]

Plaintiff notes that Dr. Williams opined she was unable to work in spite of "aggressive medical therapies." Doc. 8 at 15 (citing Tr. 356). But Dr. Williams did not explain why the therapy Plaintiff received was aggressive, and the ALJ properly found his opinions to be unpersuasive. "Even assuming the ALJ improperly characterized Plaintiff's treatment as conservative, any error was harmless in light of the other clear and convincing reasons provided in his decision." *Acevedo v. Berryhill*, No. ED CV 17-00775 AFM, 2018 WL 1155972, at *5 (C.D. Cal. Mar. 1, 2018); *see Regina L. v. Kijakazi*, No. 8:23-CV-00152-PD, 2023 WL 6926204, at *4 (C.D. Cal. Oct. 19, 2023) ("The ALJ also discounted Plaintiff's subjective complaints because . . . she generally received conservative treatment

---

[17] Contrary to Plaintiff's assertion (Doc. 8 at 15), the ALJ did not err by observing that treatment notes discuss the trips but do not mention the alleged trauma Plaintiff experienced other than noting she had a tough time without her husband. *See* Tr. 446, 470-71; *see also* Tr. 386 ("I'm good. Did go to Flagstaff with kids to Bearizona [Wildlife Park] and [the] Grand Canyon."); Tr. 388 ("The trip to CA was tough without Chris this time."). And any error in this regard is harmless for reasons stated above.

for her back and neck in the form of pain medication, physical therapy, and injections. . . . However, any error is harmless because the ALJ provided two other legitimate reasons, supported by substantial evidence, for discounting Plaintiff's testimony.").

### C.   Lay Witness Statements.

Statements of lay witnesses, such as family members, may help the ALJ assess the severity of a claimant's impairments.  *See* 20 C.F.R. § 404.1513(d)(4).  When an ALJ discounts lay witness statements, she "must give reasons that are germane to each witness." *Valentine*, 574 F.3d at 694 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Plaintiff's mother, Catherine Stewart, completed a third-party function report in March 2018.  Tr. 231-38 (Ex. 6E).  She stated that Plaintiff takes care of her children and their home, including doing laundry, making dinner, and feeding pets, but she and the children often help with housework and errands when Plaintiff is feeling bad or lacks energy or motivation.  Plaintiff has a sleep disorder and needs twelve hours of sleep when she is not doing well.  Plaintiff drives a car and leaves the house to go to the store and take the children to and from school.  Plaintiff reads a lot, watches TV, shops online, and manages her finances, but has problems concentrating, remembering things, completing tasks, and getting along with others.  Plaintiff also has difficulty handling stress and changes in her routine.  *Id.*

Plaintiff contends that the ALJ erred by failing to give germane reasons to discount the statements in her mother's report.  Doc. 8 at 18-19.  Plaintiff is mistaken.

The ALJ found Ms. Stewart's report partially persuasive to the extent "it confirms that the claimant can run a household, take care of children, and drive to needed appointments."  Tr. 450.  The ALJ otherwise found the report unpersuasive, explaining:

> She alleges the claimant has a sleep disorder and is very isolated.  This is not supported in the evidence as it appears the claimant goes on trips, accompanies her children when needed, and has medication for her sleep problems.  The claimant scored 29 out of 30 on a Mini Mental Status Exam. (Ex. 4F/4).  Furthermore, the medical records noting the claimant's bipolar disorder and insomnia were under control and her anxiety under partial control.  (Ex. 8F/1; Ex. 11F/20).  This statement does not present any new

facts that would cause the undersigned to find the claimant more limited than the RFC.

*Id.*

Because Ms. Stewart's statements were "similar to Plaintiff's allegations, the ALJ's reasons for rejecting Plaintiff's testimony apply with equal force to the lay witness statements." *Clemente v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01197-PHX-JJT, 2021 WL 1540986, at *5 (D. Ariz. Apr. 20, 2021). The ALJ therefore gave germane reasons for rejecting some of Ms. Stewart's statements. *See id.*; *Valentine*, 574 F.3d at 694 ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons she discounted Valentine's allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

**D.     The ALJ's Reliance on the Vocational Expert's Testimony.**

Plaintiff contends that the ALJ erred at step five by omitting from his hypothetical questions to the vocational expert "[her] credible allegations, the limitations described by the lay witness, and the limitations assessed by two of her treating doctors." Doc. 8 at 19. But in "posing hypothetical questions to the [vocational expert], the ALJ need not include limitations that have been appropriately discounted because they are not supported by substantial evidence." *Luttrell v. Colvin*, No. 6:14-CV-01426-PK, 2015 WL 9581412, at *6 (D. Or. Nov. 4, 2015). Because the ALJ properly discounted Plaintiff's allegations, the statements of her mother, and the opinions of her treating physicians, the hypothetical questions to the vocational expert did not need to include the limitations described in that evidence. *See Allison S. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-1456-MO, 2023 WL 8006147, at *5 (D. Or. Nov. 17, 2023) ("[T]he ALJ supportably discounted aspects of Plaintiff's subjective symptom testimony, and by extension, the limitations alleged by the lay witness. The hypotheticals the ALJ posed to the VE were therefore not incomplete,

and the ALJ did not err at step five."); *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").

**V.     Conclusion.**

Having carefully reviewed the ALJ's decision and the record as a whole, the Court finds that the decision is supported by substantial evidence and not based on harmful legal error.  The decision therefore will be affirmed.

**IT IS ORDERED:**

1.     The final decision of the Commissioner of Social Security to deny Plaintiff's claim for disability insurance benefits (Tr. 436-57) is **affirmed**.

2.     The Clerk of Court shall enter judgment accordingly.

Dated this 21st day of May, 2024.

David G. Campbell
Senior United States District Judge